



08 CV 4072

Martin W. Aron (MA 2008)
Scott H. Casher (SC 7903)
Edwards Angell Palmer & Dodge LLP
Attorneys for Defendant
750 Lexington Avenue
New York, NY 10022
(212) 308-4411

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———— ———— ———— ———— ———— ————

ROBIN WINSTON,                          No. 08 Civ.

                  Plaintiff,

                                        NOTICE OF REMOVAL

        v.

VERIZON SERVICES CORP.,

                  Defendant.

———— ———— ———— ———— ————

TO:    Stephen D. Hans & Associates, P.C.
       45-18 Court Square, Suite 403
       Long Island City, NY 11101

        **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant

Verizon Services Corp. ("Verizon") hereby removes this action from the Supreme Court of the

State of New York, County of Bronx, to this Court. The ground for removal is diversity of

citizenship, 28 U.S.C. §1332. Upon information and belief, Plaintiff is a citizen of the State of

New York, as alleged in the complaint. Defendant Verizon is a Delaware corporation with its

principal place of business in Virginia. The amount in controversy exceeds the sum of $75,000,

exclusive of interest and costs.

The summons and complaint, a copy of which is attached as Exhibit A to this notice, was

served on Verizon on April 30, 2008. Removal is therefore timely. Upon information and

belief, no other process, pleadings, or orders have been entered or served upon Defendant

Verizon Services Corp.

Written notice of the filing of this notice will be served on Plaintiff's counsel and a copy

of this notice will be filed promptly with the Clerk of the Supreme Court of the State of New

York, County of Bronx.

Dated: April 30, 2008

$S\ Cash$

Martin W. Aron (MA 2008)
Scott H. Casher (SC 7903)
Edwards Angell Palmer & Dodge LLP
Attorneys for Defendant
750 Lexington Avenue
New York, New York 10022
Tel:    (212) 308-4411
Email: SCasher@eapdlaw.com

To:    Nils C. Shillito, Esq.
       Stephen D. Hans & Associates, P.C.
       Attorneys for Plaintiff
       45-18 Court Square, Suite 403
       Long Island City, NY 11101
       (718) 275-6700

# **EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY
-----------------------------------------------------------------X
ROBIN WINSTON,

                                        Plaintiff,                      Index No. 20573/2006

            -against-

VERIZON SERVICES CORP.,                                       **AMENDED
                                                              VERIFIED
                                                              COMPLAINT**
                                        Defendant.
-----------------------------------------------------------------X

        The Plaintiff, **ROBIN WINSTON**, by and through her attorneys, **STEPHEN D. HANS**

**AND ASSOCIATES, P.C.**, as and for her Amended Verified Complaint against the above named

corporate Defendant, alleges as follows:

## INTRODUCTION

1.      This action is brought to recover damages from the Defendant corporation for its

        unlawful discriminatory discharge of Plaintiff on the basis of her race and gender, and

        for its unlawful retaliation against Plaintiff because of her complaints of discriminatory

        treatment on the basis of her race and gender, in violation of, inter alia, the New York

        State Human Rights Law, Executive Law § 296, et seq., and the New York City

        Human Rights Law, N.Y.C. Administrative Code § 8-107, et seq.

6.     Throughout her 22-year employment with Verizon, Ms. Winston was repeatedly promoted, holding such positions as Repair Service Attendant, Accounts Receivable Clerk, Accounts Representative, Quality Measurements Representative, and Corporate Accounts Manager.

7.     At the time of her termination and during the events giving rise to this action, Ms. Winston held the position of Strategic Account Manager, and was both the only African-American *and* the only female in Verizon's New York Strategic Sales Branch, a department comprised of approximately 20 Strategic Account Managers.

8.     As Strategic Account Manager, Ms. Winston's job responsibilities included, among other things, developing strategic business relationships with senior and executive level decision-makers, protecting and growing existing revenue from established accounts, uncovering new sales opportunities for voice and data services, and interacting with other internal organizations on customers' behalf to ensure customer satisfaction.

9.     In her position as Strategic Account Manager, Ms. Winston was supervised by and reported directly to Kevin Organ ("Organ"), Verizon's National Account Manager.

10.    During the entire period of her employment by Verizon, Ms. Winston was a conscientious, dedicated and skilled employee whose overall job performance and conduct were consistently excellent.

- 3 -

## VERIZON DISCRIMINATED
## AGAINST MS. WINSTON IN THE
## CONDITIONS OF HER EMPLOYMENT

11.    Ms. Winston was promoted to the position of Strategic Account Manager in May of 2000. Organ was hired by Verizon in February of 2002, and Ms. Winston first came under his supervision in February of 2003. Organ had previously been employed in Verizon's Sales Branch during the early 1990's, throughout which time the department staff was composed entirely of white males.

12.    From the start, Organ subjected Ms. Winston's work to a higher level of scrutiny than that of her white male co-workers. Organ did not show the same respect for Ms. Winston's judgment nor did he display the same trust in her abilities that he did for the white male employees under his supervision.

13.    Organ frequently tried to alter Ms. Winston's speech patterns and writing style in order to make her sound more like a white person instead of an African American from the South. These criticisms went beyond mere grammar and syntax issues, and were instead targeted at cultural aspects of Ms. Winston's communications style. On many occasions, Organ demanded to meet with Ms. Winston before a presentation or customer meeting. During these meetings, Organ grilled Ms. Winston on what she planned to say, forcing her to change her manner of expression to his satisfaction. Often times he would change her statements and force Ms. Winston to repeat his versions verbatim. If Ms. Winston did not

enunciate them to his satisfaction, Organ would comment that she did not appear "comfortable," and occasionally would forbid her to speak at the upcoming meeting at all. Organ never went through these actions with the white employees under his supervision.

14. Organ also displayed a complete lack of trust in Ms. Winston. Soon after he became Ms. Winston's supervisor, Organ told her, "There are two things that you need to know about me: I am rarely wrong and nothing ever gets by me." On a regular basis Organ would question the veracity of Ms. Winston's statements and reports. Often times he would ask Ms. Winston about others' statements and then call those people to verify that Ms. Winston had answered truthfully. Organ did not treat his white male employees in such a manner.

15. On repeated occasions, Organ verbally abused Ms. Winston in front of other Verizon employees. Frequently, he called Ms. Winston to his open cubicle and loudly yelled at her within the hearing of everyone on the office floor. This humiliating behavior did not stop even after Ms. Winston asked Organ to refrain from screaming at her in public. Organ never engaged in such behavior with his white male employees.

16. Organ responded to Ms. Winston's complaints by telling her "You could catch more flies with honey," and also said that "This could come back to haunt you." Indeed, in Ms. Winston's subsequent performance appraisal on September 30, 2003, Organ attacked her core competencies without justification. When Ms. Winston objected to some of the

-5-

statements in the appraisal and suggested more accurate alternative language, Organ refused her suggestions.

17.    Organ was adamant about Ms. Winston's performance appraisal, clashing with her over the specific language of his unwarranted negative remarks. However, Organ did not follow the same approach when evaluating white male employees. Indeed, when Ms. Winston spoke to the white male Strategic Account Managers under Organ's supervision, she learned that Organ was very relaxed about *their* evaluations. Upon information and belief, Organ even told one particular white male employee, "Don't worry about your mid-year review – no one ever reads it." This easygoing attitude towards the performance evaluations of white male employees stands in sharp contrast to Organ's appraisal of Ms. Winston. Organ was abusing the legitimate practice of employee evaluations in order to discriminate against Ms. Winston because she is an African-American female. Additionally, he sought to use the employee appraisal procedure as a means to create an alternative justification for his planned termination of Ms. Winston, since her status as an African-American female was not a lawful reason for her dismissal.

18.    Following this negative performance appraisal, Organ created a three-month performance development plan for Ms. Winston, outlining certain objectives to be reached by April 8, 2004. Ms. Winston easily satisfied the plan's objectives within the allotted time frame. Organ himself was forced to admit that Ms. Winston had exceeded the expectations of the plan well within the allotted time frame. Nevertheless, Organ said to

-6-

Ms. Winston, "Even if you pass the plan, do not think that it is a 'get out of jail free' ticket."

19.    On November 11, 2003, Organ called Ms. Winston into a conference room and accused her of stealing money in the form of payouts from a large sales account. Specifically, Organ said, "I have reports showing that some of Morgan Stanley's sales have been flowing to you." Appalled at such an accusation, Ms. Winston vehemently denied any such wrongdoing.

20.    In fact, the payout problem was actually due to an error in Verizon's sales payout computer software. Such software errors were not at all uncommon at Verizon. Indeed, when such an error was discovered, it was standard company procedure for the Compensation Personnel to make the appropriate adjustments in the database. It was *not* standard procedure at Verizon to confront, interrogate, and accuse employees of improperly altering the payout structure to their financial advantage.

21.    Notably, Strategic Account Managers like Ms. Winston have "read only" access to the Verizon sales payout software, and cannot make substantive changes to the system data. As a result, Ms. Winston could not possibly have altered the payout structure to divert money from other accounts, making Organ's interrogation of Ms. Winston completely unwarranted. Organ never treated white male employees in such a manner in similar situations.

- 7 -

## MS. WINSTON COMPLAINS OF DISCRIMINATION
## TO VERIZON'S EMPLOYEE ASSISTANCE PROGRAM
## AND THE HUMAN RESOURCES DEPARTMENT

22.     In December of 2003, Ms. Winston met with representatives from Verizon's Employee Assistance Program ("EAP"), including Sales Director Cynthia Germanotta ("Germanotta"). Ms. Winston complained of Organ's mistreatment, stating that she felt Organ was discriminating against her because of her status both as a female and as an African-American.

23.     Upon hearing Ms. Winston's complaints, Germanotta immediately defended Organ's actions and statements and threatened Ms. Winston, telling her never to speak of what she had told her again. Upon information and belief, neither Germanotta, nor any other EAP staff, took any action at all in response to Ms. Winston's complaints of racial and gender discrimination.

24.     On January 8, 2004, Ms. Winston met with Verizon Human Resources ("HR") Representative Marguerite Ropke ("Ropke") to discuss her problems with Organ. As with the EAP, Ms. Winston made clear to Ropke that she felt Organ was discriminating against her on the basis of both her race and gender.

25.     Ropke relayed Ms. Winston's concerns to HR Manager Patrick Koseski ("Koseski"), who in turn contacted Organ and alerted him to Ms. Winston's complaints.

- 8 -

Ms. Winston was later distraught when Organ approached her and mentioned that he knew of her discrimination complaints against him.

26.    Upon information and belief, neither Ropke, Koseski, nor any other HR staff took any other action at all in response to Ms. Winston's complaints of racial and sexual discrimination.

### MS. WINSTON WAS UNLAWFULLY DISCHARGED ON THE BASIS OF HER RACE AND GENDER AND IN RETALIATION FOR HER COMPLAINTS OF RACIAL AND SEXUAL DISCRIMINATION

27.    Within only a few weeks of Ms. Winston's meetings with HR, Organ told Koseski that he felt Ms. Winston should not be working in the Strategic Sales Branch. Instead, Organ said that he felt Ms. Winston would be better off in the Regional Sales Group as a Corporate Account Manager.

28.    Interestingly, there are a number of African-American and female Corporate Account Managers in the Regional Sales Group. This department lacks the prestige of the Strategic Sales Branch and employees in the department are paid significantly less. Upon information and belief, Organ believed that African-American female employees like Ms. Winston belonged in the Regional Sales Group, and not in his elite, white male Strategic Sales Branch.

29.    On April 28, 2004 Organ told Ms. Winston that she was being terminated. Ms. Winston was given thirty days to seek another position within a different department, such as the less prestigious Regional Sales Group, which was repeatedly suggested.

30.    Despite her substantial efforts, Ms. Winston was unable to obtain alternate employment with another Verizon department. One week prior to her final termination on June 14, 2004, Verizon brought in a white male to take over her position in the Strategic Sales Branch, restoring both racial and gender uniformity to the department once more.

### AS AND FOR A FIRST CAUSE OF ACTION
(Discriminatory Discharge Based on Race)
N.Y. State Executive Law § 296 (1) (a)

31.    Plaintiff repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 30 above as if fully set forth herein.

32.    As an African-American, Ms. Winston, during all relevant times, was (and is) a member of a protected group under the New York State Human Rights Law (Executive Law, Section 296).

33.    During all relevant times, including, in particular, the time in, around and including the date of her unlawful discriminatory discharge by Verizon, Ms. Winston was highly qualified for, and an excellent performer in, the position in which she was employed by Verizon, Strategic Account Manager.

- 10 -

34.    Recent examples of Ms. Winston's excellent job performance while employed by
Verizon as a Strategic Account Manager are set forth as follows:

   a. Ms. Winston prepared and gave a highly successful Capabilities Presentation on
      January 20, 2004 which effectively turned around the suffering Credit Suisse
      First Boston ("CSFB") account, opening the door for Verizon to bid on millions
      of dollars in new business with CSFB that would not have been otherwise
      available.

   b. Ms. Winston easily met all of the requirements of the three month development
      plan instituted by Organ leading up to her dismissal.

35.    Nonetheless, as described in greater detail in Paragraphs 27 through 30 above, Ms.
Winston was discharged from her position as Strategic Account Manager.

36.    The facts establish that Verizon discharged Ms. Winston because she was an
African-American. Examples of such facts include, among others, the following:

   a. Ms. Winston's overall job performance had been consistently excellent;

   b. Ms. Winston was the only African-American Strategic Account Manager in the
      entire Strategic Sales Branch, and was replaced by a white employee upon her
      termination, restoring complete racial uniformity to the department;

   c. Organ and others had stated that they felt Ms. Winston belonged in the more
      racially-diverse and less prestigious Regional Sales Group.

- 11 -

d.  As alleged in greater detail above (Paragraphs 11 - 21), Verizon had previously discriminated against Ms. Winston in her employment conditions based upon her race.

37.  Verizon's above-described unlawful discriminatory discharge of Ms. Winston because of her race constitutes a direct and egregious violation of New York State Executive Law, Section 296(1)(a).

38.  Though Ms. Winston has diligently sought new employment from the moment she was first notified of her impending termination, she remained unemployed for over nine (9) months following her termination on June 14, 2004 until March 28, 2005.

39.  Verizon's unlawful discriminatory discharge of Ms. Winston has caused her to suffer, among other things, loss of earnings and benefits and great mental and emotional distress, including but not limited to, intense anxiety, depression and an inability to sleep.

40.  As a direct result of Verizon's unlawful discriminatory discharge of Ms. Winston because of her race, Verizon is liable to Ms. Winston for, among other things, back pay and benefits from the date of her discharge, front pay and benefits, both with interest thereon, and compensatory damages of no less than $2,000,000.00 for the

mental and emotional distress suffered by Ms. Winston, all in amounts to be
determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
(Discriminatory Discharge Based on Race)
Violation of N.Y.C. Administrative Code § 8-107 (1) (a)

41.      Plaintiff repeats and realleges each and every one of the allegations contained in
Paragraphs 1 through 40 above as if fully set forth herein.

42.      The allegations set forth in Paragraphs 31 through 40 above (and the allegations
incorporated therein), which constitute unlawful discriminatory discharge on the basis of
Ms. Winston's race in violation of the New York State Executive Law, Section 296(1)(a),
also constitute unlawful discriminatory discharge on the basis of Ms. Winston's race in
. violation of the New York City Administrative Code, Section 8-107(1)(a).

43.      Said unlawful discriminatory discharge of Ms. Winston based upon her race has
caused Ms. Winston to suffer, among other damages, severe mental and emotional distress,
including but not limited to, intense anxiety, depression and an inability to sleep, for which
Verizon is liable, all in an amount to be determined at trial, but no less than $2,000,000.00.

44.      In engaging in the egregious unlawful discriminatory discharge described above,
Verizon acted with malice toward Ms. Winston or, at the very least, with reckless

- 13 -

indifference to her rights under the New York City Human Rights Law. Accordingly, pursuant to the N.Y.C. Administrative Code, Section 8-502(a), Verizon is liable to Ms. Winston for punitive damages, in an amount to be determined at trial, but no less than $3,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discriminatory Discharge Based on Sex)
### N.Y. State Executive Law § 296 (1) (a)

45.     Plaintiff repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 44 above as if fully set forth herein.

46.     As a female, Ms. Winston, during all relevant times, was (and is) a member of a protected group under the New York State Human Rights Law (Executive Law, Section 296).

47.     During all relevant times, including, in particular, the time in, around and including the date of her unlawful discriminatory discharge by Verizon, Ms. Winston was highly qualified for, and an excellent performer in, the position in which she was employed by Verizon, Strategic Account Manager.

48.     Recent examples of Ms. Winston's excellent job performance while employed by Verizon as a Strategic Account Manager are set forth as follows:

- 14 -

a. Ms. Winston prepared and gave a highly successful Capabilities Presentation on January 20, 2004 which effectively turned around the suffering Credit Suisse First Boston ("CSFB") account, opening the door for Verizon to bid on millions of dollars in new business with CSFB that would not have been otherwise available.

b. Ms. Winston easily met all of the requirements of the three month development plan instituted by Organ leading up to her dismissal.

49. Nonetheless, as described in greater detail in Paragraphs 27 through 30 above, Ms. Winston was discharged from her position as Strategic Account Manager.

50. The facts establish that Verizon discharged Ms. Winston because she was a woman. Examples of such facts include, among others, the following:

a. Ms. Winston's overall job performance had been consistently excellent;

b. Ms. Winston was the only female Strategic Account Manager in the entire Strategic Sales Branch, and was replaced by a male employee upon her termination, restoring complete gender uniformity to the department;

c. As alleged in greater detail above '(Paragraphs 11 - 21), Verizon had discriminated against Ms. Winston in her employment conditions based upon her gender.

- 15 -

51.  Verizon's above-described unlawful discriminatory discharge of Ms. Winston
     because of her sex constitutes a direct and egregious violation of Executive Law,
     Section 296(1)(a).

52.  Though Ms. Winston has diligently sought new employment from the moment she
     was first notified of her impending termination, she remained unemployed for over
     nine (9) months following her termination on June 14, 2004 until March 28, 2005.

53.  Verizon's unlawful discriminatory discharge of Ms. Winston has caused her to
     suffer, among other things, loss of earnings and benefits and great mental and
     emotional distress, including but not limited to, intense anxiety, depression and an
     inability to sleep.

54.  As a direct result of Verizon's unlawful discriminatory discharge of Ms. Winston
     because of her sex, Verizon is liable to Ms. Winston for, among other things, back
     pay and benefits from the date of her discharge, front pay and benefits, both with
     interest thereon, and compensatory damages of no less than $2,000,000.00 for the
     mental and emotional distress suffered by Ms. Winston, all in amounts to be
     determined at trial.

                    AS AND FOR A FOURTH CAUSE OF ACTION
                    (Discriminatory Discharge Based on Gender)
              Violation of N.Y.C. Administrative Code § 8-107 (1) (a)

                                    - 16 -

55.    Plaintiff repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 54 above as if fully set forth herein.

56.    The allegations set forth in Paragraphs 45 through 54 above (and the allegations incorporated therein), which constitute unlawful discriminatory discharge on the basis of Ms. Winston's sex in violation of the New York State Executive Law, Section 296(1)(a), also constitute unlawful discriminatory discharge on the basis of Ms. Winston's gender in violation of the New York City Administrative Code, Section 8-107(1)(a).

57.    Said unlawful discriminatory discharge of Ms. Winston based upon her gender has caused Ms. Winston to suffer, among other damages, severe mental and emotional distress, including but not limited to, intense anxiety, depression and an inability to sleep, for which Verizon is liable, all in an amount to be determined at trial, but no less than $2,000,000.00.

58.    In engaging in the egregious unlawful discriminatory discharge described above, Verizon acted with malice toward Ms. Winston or, at the very least, with reckless indifference to her rights under the New York City Human Rights Law. Accordingly, pursuant to the N.Y.C. Administrative Code, Section 8-502 (a), Verizon is liable to Ms. Winston for punitive damages, in an amount to be determined at trial, but no less than $3,000,000.00.

AS AND FOR A FIFTH CAUSE OF ACTION
(Retaliation Based on Complaints of Racial / Sex Discrimination)

## N.Y. State Executive Law § 296(1)(e)

59.    Plaintiff repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 58 above as if fully set forth herein.

60.    As both an African-American and a female, Ms. Winston, during all relevant times, was (and is) a member of two independently protected groups under the New York State Human Rights Law (Executive Law, Section 296).

61.    As alleged in greater detail above (Paragraphs 22 - 26), Ms. Winston repeatedly complained of unlawful discriminatory treatment on the basis of her race and gender to a number of staff members of both the Employee Assistance Program and Human Resources departments.

62.    On June 14, 2004, only a few months after lodging her discrimination complaints, Ms. Winston was discharged from her position as Strategic Account Manager.

63.    Verizon's above-described unlawful retaliatory discharge of Ms. Winston because of her complaints of discriminatory treatment on the basis of race and gender constitutes a direct and egregious violation of Executive Law, Section 296 (1) (e).

64.   Though Ms. Winston has diligently sought new employment from the moment she
      was first notified of her impending termination, she remained unemployed for over
      nine (9) months following her termination on June 14, 2004 until March 28, 2005.

65.   Verizon's unlawful retaliatory discharge of Ms. Winston has caused her to suffer,
      among other things, loss of earnings and benefits and great mental and emotional
      distress, including but not limited to, intense anxiety, depression and an inability to
      sleep.

66.   As a direct result of Verizon's unlawful retaliatory discharge of Ms. Winston
      because of complaints of discriminatory treatment on the basis of race and gender,
      Verizon is liable to Ms. Winston for, among other things, back pay and benefits
      from the date of her discharge, front pay and benefits, both with interest thereon,
      and compensatory damages of no less than $2,000,000.00 for the mental and
      emotional distress suffered by Ms. Winston, all in amounts to be determined at
      trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Retaliation Based on Complaints of Racial / Gender Discrimination)
Violation of N.Y.C. Administrative Code § 8-107(7)

67.   Plaintiff repeats and realleges each and every one of the allegations contained in
      Paragraphs 1 through 66 above as if fully set forth herein.

68.     The allegations set forth in Paragraphs 59 through 66 above (and the allegations incorporated therein), which constitute unlawful retaliatory discharge of Ms. Winston because of her complaints of discriminatory treatment on the basis of her race and sex in violation of the New York State Executive Law, Section 296(1)(e), also constitute unlawful retaliatory discharge of Ms. Winston because of her complaints of discriminatory treatment on the basis of her race and gender in violation of the New York City Administrative Code, Section 8-107(7).

69.     Said unlawful retaliatory discharge of Ms. Winston because of her complaints of discriminatory treatment on the basis of her race and gender has caused Ms. Winston to suffer, among other damages, severe mental and emotional distress, including but not limited to, intense anxiety, depression and an inability to sleep, for which Verizon is liable, all in an amount to be determined at trial, but no less than $2,000,000.00.

70.     In engaging in the egregious unlawful retaliatory discharge described above, Verizon acted with malice toward Ms. Winston or, at the very least, with reckless indifference to her rights under the New York City Human Rights Law. Accordingly, pursuant to the N.Y.C. Administrative Code, Section 8-502(a), Verizon is liable to Ms. Winston for punitive damages, in an amount to be determined at trial, but no less than $3,000,000.00.

71.   Pursuant to the N.Y.C. Administrative Code, Section 8-502(f), Ms. Winston is also entitled to receive from Verizon her costs and reasonable attorneys' fees in connection with this action.

WHEREFORE, Plaintiff Robin Winston requests judgment against Defendant Verizon Communications Inc. as follows:

  a. On the First Cause of Action, for Discriminatory Discharge on the Basis of Race in violation of N.Y. State Executive Law § 296(1)(a), compensatory damages in the amount of at least $2,000,000.00;

  b. On the Second Cause of Action, for Discriminatory Discharge on the Basis of Race in violation of N.Y.C. Administrative Code § 8-107(1)(a), compensatory damages in the amount of at least $2,000,000.00, and punitive damages in the amount of at least $3,000,000.00;

  c. On the Third Cause of Action, for Discriminatory Discharge on the Basis of Sex in violation of N.Y. State Executive Law § 296(1)(a), compensatory damages in the amount of at least $2,000,000.00;

  d. On the Fourth Cause of Action, for Discriminatory Discharge on the Basis of Gender in violation of N.Y.C. Administrative Code § 8-107(1)(a), compensatory damages in the amount of at least $2,000,000.00, and punitive damages in the amount of at least $3,000,000.00;

e.  On the Fifth Cause of Action, for Retaliation Based on Race / Sex in violation of N.Y. State Executive Law § 296(1)(e), compensatory damages in the amount of at least $2,000,000.00;

f.  On the Sixth Cause of Action, for Retaliation Based on Race / Gender in violation of N.Y.C. Administrative Code § 8-107(7), compensatory damages in the amount of at least $2,000,000.00, and punitive damages in the amount of at least $3,000,000.00;

g.  In the event that any relief is granted pursuant to the N.Y.C. Administrative Code § 8-107, et seq, Plaintiff's costs and reasonable attorneys' fees in connection with this action; and

h.  Such other and further relief as this Court deems just and proper.

Dated: April 28, 2008
       Long Island City, New York

STEPHEN D. HANS & ASSOCIATES, P.C.

By:
Stephen D. Hans
45-18 Court Square, Suite 403
Long Island City, New York 11101
Tel: 718.275.6700
Fax: 718.275.6704
Email: shans@hansassociates.com
*Attorneys for the Plaintiff*
*Robin Winston*

## VERIFICATION

STATE OF NEW YORK )
                ) ss.:
COUNTY OF QUEENS )

       I, ROBIN WINSTON, being duly sworn, depose and say that:

          I am the Plaintiff in the within action. I have read the foregoing
Amended Verified Complaint, and I know the contents thereof and
the same is true to my own knowledge, except as to the matters
therein stated to be alleged upon information and belief, and as to
those matters, I believe them to be true.

ROBIN WINSTON

Sworn to before me on
this 28th day of April 2008.

Notary Public

STEPHEN D. HANS
Notary Public, State of New York
No. 02HA4658402
Qualified in Queens County
Commission Expires June 30, 2011

- 23 -